UNITED STATES OF AMERICA, PLAINTIFF *v.*
OUTBOARD MARINE CORP., DEFENDANT

Court No. 97–03–00454

(Dated August 14, 1998)

*Frank W. Hunger,* Assistant Attorney General; *David M. Cohen,* Director; *Kenneth S. Kessler,* Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice; Office of the Assistant Chief Counsel (Chicago), International Trade Litigation, United States Customs Service *(Tamara Krauskopf),* of counsel, for plaintiff.

Sonnenberg & Anderson *(Steven P. Sonnenberg* and *Jacqueline M. Paez)* for defendant, Outboard Marine Corporation.

## MEMORANDUM OPINION AND ORDER

GOLDBERG, *Judge:* There are two motions currently pending before this Court in the above-captioned case: the defendant's, Outboard Marine Corp.'s ("OMC"), Motion to Dismiss and for Declaratory Judgment; and the plaintiff's, the United States', Motion for Summary Judgment. Because both motions raise substantially the same issues and arguments, the Court addresses them here jointly in the interest of judicial economy. For the reasons set forth below, the Court grants OMC's Motion to Dismiss and for Declaratory Judgment in part, denies it in part, and denies the United States' Motion for Summary Judgment in its entirety.

## BACKGROUND

This is a civil penalty action brought by the United States against OMC pursuant to 19 U.S.C. § 1592 (1988). The United States contends that between June 1, 1988 and September 30, 1989, OMC made a number of grossly negligent or negligent material and false statements in connection with approximately 500 entries of merchandise consisting of, *inter alia,* electric motors and outboard engines purchased from Outboard Marine Asia, Ltd. Specifically, the United States alleges that OMC submitted entry papers and corresponding invoices for these entries falsely asserting that the merchandise involved contained components that were exempt from duty as American Goods Returned under item 807 of the Tariff Schedules of the United States ("TSUS") or subheading 9802 of the Harmonized Tariff Schedules of the United States ("HTSUS"). The Court will refer to this issue as "the 807 issue."

The United States further alleges that OMC overstated the total cost of the components that it entered as duty-exempt, first by submitting invoices listing the standard costs (*i.e.,* the estimated costs) of the components without disclosing this fact to Customs; and second by failing to submit the actual cost data for the components when it became available. The Court will refer to this issue as the "actual versus standard costs issue."

The United States claims that as a result of these material and false statements, it has been deprived of approximately $169,205 in lawful duty. It therefore seeks damages in the amount of $676,820 (four times the amount of duties lost) if the Court determines that OMC was grossly negligent, or, in the alternative, damages in the amount of $338,410 (two times the amount of the duties lost) if the Court determines that OMC was negligent. *See* 19 U.S.C. §§ 1592(c)(2) and (3) (defining the maximum penalties available for grossly negligent and negligent conduct, respectively).

On January 15, 1998, OMC moved to dismiss fifty of the entries from the complaint on statute of limitations grounds; OMC also moved for declaratory judgment or, in the alternative, dismissal on the remaining entries with respect to the actual versus standard costs issue. That motion became ready for decision on May 20, 1998. While that motion was pending before the Court, discovery closed, and on June 10, 1998, the United States moved for summary judgment on the 807 issue and the actual versus standard costs issue. That motion became ready for decision on August 4, 1998. Because the arguments and issues raised in the United States motion mirror those initially raised in OMC's motion, the Court deemed it prudent to address both motions in a single opinion.

## DISCUSSION

### I.

The Court begins by discussing OMC's Motion to Dismiss and for Declaratory Judgment. It can be divided into two parts. In part one, OMC moves to dismiss fifty entries from the complaint on statute of limitations grounds. In part two, OMC moves for declaratory judgment on, or alternatively for dismissal of, that portion of the complaint that seeks to recover penalties on the actual versus standard cost issue. The Court will address each part in turn.

### A.

OMC asserts that fifty of the entries identified by the United States in Exhibit A to its complaint were not included in the waiver of the statute of limitations executed by OMC on March 21, 1995. The United States agrees, conceding that these entries are time-barred. Therefore, the Court grants OMC's motion to dismiss these fifty entries from the complaint.[1] The United States shall file an amended complaint eliminating these entries from Exhibit A within fifteen days of the date of this Memorandum Opinion and Order.

Furthermore, since these fifty entries are no longer before the Court, the amount of penalties requested in the original complaint no longer reflects the amount of duty lost as a result of OMC's alleged gross negli-

---

[1] The dismissed entries are as follows: 1052315–4; 1056388–7; 1057011–4; 1057684–8; 1057844–8; 1057889–3; 1060878–1; 1060911–0; 1060912–8; 1061061–3; 1061152–0; 1061181–9; 1061185–0; 1061340–1; 1061370–8; 1061401–1; 1061440–9; 1061484–7; 1061569–5; 1061752–7; 1062007–5; 1062010–9; 1062014–1; 1062175–0; 1062321–0; 1062361–6; 1062439–0; 1062625–4; 1134047–5; 1134159–8; 1134619–1; 1135162–1; 1136062–2; 1136539–2; 1136698–3; 1136940–9; 1137079–5; 1137278–3; 1137673–5; 1137690–9; 1137744–4; 1137746–9; 1137785–7; 1137804–6; 1137891–3; 1137901–0; 1138931–7; 1137974–7; 1052300–6; 1056312–7.

gence or negligence. *See* 19 U.S.C. §§ 1592(c)(2) (setting maximum penalty for gross negligence as equal to either the domestic value of the merchandise or four times the lawful duty "of which the United States is or may be deprived," whichever is less); and 1592(c)(3) (setting maximum penalty for negligence as equal to either the domestic value of the merchandise or two times the lawful duty "of which the United States is or may be deprived," whichever is less). Thus, in its amended complaint, the United States shall recalculate the amount of duty lost as a result of OMC's alleged gross negligence or negligence, and the corresponding amount of penalties sought in Counts I and II of its complaint accordingly.

## B.

OMC next argues that the Court should declare invalid, or alternatively dismiss, that portion of plaintiff's complaint that involves the actual versus standard costs issue. Briefly, OMC contends that because it correctly appraised the merchandise at issue using the transaction value method, it was not required to inform Customs that the costs of duty-exempt components stated on the invoices were standard rather than actual. The Court is unpersuaded.

Initially, the Court notes that part two of OMC's Motion to Dismiss and For Declaratory Judgment is misnamed. It is neither. Rather, it is properly considered a motion for partial summary judgment. Declaratory relief is a remedy created by 28 U.S.C. § 2201 (1994). Under § 2201, "any court of the United States, *upon the filing of an appropriate pleading*, may declare the rights and other legal relations of any interested party seeking such declaration." (emphasis added). The pleading and practice requirements for actions seeking declaratory relief are the same as for other civil actions. *See* USCIT R. 57; 10B C. Wright, A. Miller & M. Kane, Federal Practice & Procedure 3d § 2768 (1998). That is, plaintiffs may commence suit for declaratory relief by filing a summons and complaint, *see* USCIT Rs. 3 and 4, and defendants may do so by filing a counterclaim. *See* USCIT R. 13; 10B Wright, Miller & Kane, Federal Practice & Procedure 3d § 2768; 6 C. Wright, A. Miller & M. Kane, Federal Practice & Procedure 2d § 1406 (1990). Here, OMC has not filed a counterclaim seeking declaratory relief; thus, this remedy is unavailable and a motion seeking such relief is not appropriate.

Moreover, OMC's motion cannot be considered a motion to dismiss because it references materials that are outside the pleadings. For example, in its discussion of transaction value, OMC references a letter from the regulatory audit division, *see* Def.'s Mot. to Dismiss & For Declaratory J. at 8; an audit report prepared by the United States Customs Service, *see id.* at 9; and various cost submissions that OMC prepared. *See id.* at 12. By presenting materials outside the pleadings, OMC has transformed its motion to dismiss into a motion for partial summary judg-

812

ment, and the Court treats it as one accordingly.[2] *See* USCIT Rs. 12(b) and 12(c) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 * * *.").

The Court now turns to the merits of this partial summary judgment motion. Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." USCIT R. 56(d). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The disputed fact is material if it "might affect the outcome of the suit under the governing law." *Id.* The Court resolves any doubt over material factual issues in favor of the nonmoving party. *See Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987).

Here, OMC's predicates its motion for summary judgment on the fact that it correctly appraised the merchandise at issue using the transaction value method. *See* Def.'s Mot. to Dismiss and For Declaratory J. at 9–10. Specifically, OMC contends that "Customs' practice has consistently recognized the validity of transaction value based on transfer prices between related companies utilizing standard costs, including situations involving TSUS 807.00/HTSUS 9802.0080 entries." *Id.* at 10. And, that "[b]ased on these Customs Service rulings, OMC had reason to believe its entries of TSUS 807.00 entries were afforded similar treatment, and that the transfer price was accepted as reflective of transfer value for its entries." *Id.* at 11.

OMC's arguments miss their mark. The 807 import program allows importers to deduct the cost or value of components that qualify as American Goods Returned from the full value of merchandise assembled abroad. *See* 19 C.F.R. § 10.13 (1987). By reducing the value of the assembled merchandise by the value or cost of the U.S. components, the 807 program reduces the amount of duty importers owe. The relevant regulations provide that the full value of the assembled merchandise is determined in accordance with 19 C.F.R. § 152.100 *et. seq. See* 19 C.F.R. § 10.18 (1987). 19 C.F.R. § 152.101, in turn, delineates a hierarchy of appraisal methodologies, which parallels the appraisal methodologies listed in 19 U.S.C. 1401a. The preferred methodology in this hierarchy is transaction value, even in cases where there are related parties. *See id.*

---

[2] This result should hardly come as a surprise to OMC since it also references USCIT R. 56(d) as the relevant standard of review. *See* Mot. to Dismiss and For Declaratory J. at 7. USCIT R. 56(d) is the standard of review for motions for summary judgment.

In contrast, 19 C.F.R. § 10.17 provides that the value of the duty-exempt components is "the cost of the components when last purchased, f.o.b. United States." Importantly,

> [w]hen a claim for the exemption is predicated on estimated cost data, furnished either in advance of or at the time of entry, this fact should be clearly stated in writing at the time of entry, and suspension of liquidation may be requested by the importer or his agent pending the furnishing of actual cost data. Actual cost data must be submitted as soon as accounting procedures permit.

19 C.F.R. § 10.21 (1987).

In this case, plaintiff's penalty action is not based on OMC's choice of valuation methodology for the assembled merchandise. Rather, it is based on OMC's alleged failure to notify Customs that the cost data listed on invoices for duty-exempt components was *estimated* instead of *actual*, and on OMC's alleged failure to submit data on the actual costs of the components when it became available. *See* Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss & For Declaratory J. at 12. OMC has failed to convince this Court why, against this backdrop, the fact that it correctly appraised the assembled merchandise, even if undisputed, is material. The relevant issue is not whether OMC appraised the assembled merchandise correctly, but rather whether OMC told Customs that the cost data of the U.S. components was estimated. Thus, the Court denies OMC's motion for partial summary judgment.

## II.

The Court now turns to the United States' Motion for Summary Judgment. The United States contends that no genuine issues of material fact exist to prevent the Court from concluding that OMC was either grossly negligent or negligent with respect to both the 807 issue and the actual versus standard costs issue. Specifically, it argues as follows:

> (1) OMC's entry documents for the merchandise at issue contained material and false statements because approximately 30 percent of the components identified as American Goods Returned in fiscal years 1988 and 1989 could not be verified as being of U.S. origin.

> (2) These false statements were grossly negligent because (a) OMC did not regularly request country of origin certificates from its vendors for these components; (b) OMC did not segregate parts based on the country of origin; (c) OMC did not heed the advice of Customs' Import Specialist Charles Rufener, who informed OMC that one of the headings on its entry documents did not comply with the governing regulations; and (d) OMC knew how to comply with the governing statutes and regulations as evidenced by correspondence between OMC personnel and Import Specialist Rufener, and by OMC's 807 program with its assembly plant in Mexico, which was in compliance.

> (3) OMC's invoices for the merchandise at issue omitted material information by failing to disclose that the costs of the components were standard.

(4) OMC knew it was obligated to disclose this fact because it did so with respect to the 807 entries imported from Mexico.

(5) And, finally, if these false statements were not grossly negligent, they were at least negligent because OMC breached its duty to consult the relevant statutes and regulations, which would have informed OMC that it was required (a) to obtain proof of the country of origin for components before it claimed an allowance for them under 807; (b) to disclose that the invoice costs of the components were standard; and (c) to disclose the actual costs of the components to Customs.

*See* Pl.'s Mem. in Supp. of Pl.'s Mot. for Summ. J. at 6–9, 11–12, 14–21 ("Pl.'s Mot. Summ. J.").

The Court has reviewed the evidence adduced by the United States in support of the arguments detailed above, and the evidence adduced by OMC in response. Having done so, the Court finds that genuine issues of material fact render this case inappropriate for disposition on summary judgment. For example, correspondence between Import Specialist Rufener could be interpreted not as evidence of OMC's gross negligence, but instead as evidence of OMC's desire and willingness to comply with the relevant statutes and regulations. Indeed, the correspondence could even, as OMC suggests, be used to demonstrate that OMC developed and maintained an 807 import program in Asia that substantially complied with U.S. law, even though some mistakes were made.

Similarly, evidence relating to OMC's 807 program in Mexico could also support competing inferences. For instance, on the one hand, one might, as the United States argues, conclude that OMC knew its 807 import program in Asia failed to comply with U.S. law. On the other hand, one might instead conclude that historically OMC complied with U.S. law and was, therefore, more likely than not attempting to comply with U.S. law in this case.

Finally, there is some evidence that OMC informed Import Specialist Rufener that the invoices for the components at issue reflected standard costs. *See* Def.'s Mem. in Opp'n to Pl.'s Mot. for Summ. J. at Ex. F (Rufener meeting notes). The Court is singularly unimpressed by plaintiff's attempt to sweep this evidence under the rug by arguing that the Court should ignore it because it is merely OMC's uncorroborated assertions. *See* Pl.'s Reply at 12. The evidence adduced by OMC is Import Specialist Rufener's notes, and its relevance is best assessed at trial.

The Court further notes that a reasonable mind might conclude that OMC's conduct with respect to the 807 import program in Mexico lends credence to OMC's claim that it told Import Specialist Rufener about the invoices. As discussed by the United States, OMC notified Customs that the invoices for the components involved in the Mexican 807 import program reflected standard costs. *See* Pl.'s Mot. Summ. J. at 18. And, at the request of the import specialist reviewing the Mexican entries, OMC filed annual cost submissions detailing the components' actual costs. A reasonable mind might infer from this that OMC practices good corpo-

rate governance. This inference, when combined with Import Specialist Rufener's meeting notes, could then persuade a reasonable mind that OMC informed Import Specialist Rufener about the invoices. All of these issues are disputed and clearly material. Consequently, the Court denies plaintiff's Motion for Summary Judgment and deems that the case should proceed to trial.

## III.

For the foregoing reasons, and upon consideration of Defendant's Motion to Dismiss and For Declaratory Judgment, Plaintiff's Response in Opposition thereto, Plaintiff's Motion for Summary Judgment, Defendant's Response in Opposition thereto, and all other pertinent papers, it is hereby

ORDERED that the portion of Defendant's Motion to Dismiss and For Declaratory Judgment seeking dismissal of the fifty enumerated entries on statute of limitations grounds is granted;

ORDERED that defendant's motion is denied in all other respects;

ORDERED that plaintiff shall file an amended complaint eliminating the fifty entries for which the statue of limitations has run from Exhibit A to its complaint within fifteen days from the date of this Memorandum Opinion and Order;

ORDERED that plaintiff shall recalculate both the amount of duty lost and the corresponding amount of penalties sought in its amended complaint to reflect the fact that these fifty entries are no longer at issue; and it further

ORDERED that Plaintiff's Motion for Summary Judgment is denied in all respects.